ROBERT MAXWELL CHERRY, GUARDIAN *v.*
CORINNE NORWOOD ET AL

5-5318                                    459 S. W. 2d 132

Opinion delivered November 2, 1970

*Amis Guthridge,* for appellant.

*James L. Sloan,* for appellees.

CONLEY BYRD, Justice. This proceeding was commenced by appellant Robert Maxwell Cherry, as guardian of his father Charles Kress Cherry, against appellee Corinne Norwood and Pulaski Federal Savings and Loan Association to recover a $10,000 savings account in the joint names of Charles Kress Cherry and Corinne Norwood with a right of survivorship. Recovery of an automobile owned by the elder Cherry and transferred to Corrine Norwood was also sought. The trial court granted the relief prayed for in the recovery of the savings account and the automobile but awarded to appellee Norwood, on an alternative plea, a judgment of $3,600.00 as compensation for the reasonable value of her services as a housekeeper. For reversal of the judgment appellant relies upon the following points:

    I.    The special chancellor erred in failing to find that C. K. Cherry was incompetent, and failing to find that the appellee Corinne Nor-

wood exerted undue influence in her relations with C. K. Cherry.

II.     The special chancellor erred in awarding judgment to the appellee and the award is against the preponderance of the evidence, but in any event, the special chancellor awarded an excessive amount.

III.    The special chancellor erred in allowing the attorney who had represented the appellant's ward, but who filed the counter-claim for appellee, to testify, such testimony being inadmissible as incompetent.

As we view the record, points I and III, relied upon by appellant, are moot. There is no appeal from the decree awarding the property to the guardian. Thus whether the trial court should have found that the ward was competent or incompetent or that appellee exerted undue influence on the ward is immaterial to the issues presented here. Furthermore, the testimony complained of in point III merely went to the competency or incompetency of the ward at the time the witness was dealing with him. Should we reach the merits, however, we doubt that this type of testimony is incompetent under Ark. Stat. Ann. § 28-601 (Repl. 1962).

The record here shows that Cherry was a Tayloe Paper Co. salesman for over 30 years. His first wife, the mother of his three children, died in 1933. In 1936 he married Pearl Cherry who died in 1965. Thereafter, he lived alone for about 2 years. Appellee Norwood was employed as his housekeeper on Sept. 20, 1967.

Initially Cherry was to pay Mrs. Norwood $20.00 a week. It was also understood that a maid would clean house once a week and that appellee could work elsewhere as long as she cooked his meals and did the housework. As a result, appellee also worked as a cashier for $56.00 a week. After about two months this agreement was changed by the parties and resulted in Mrs.

Norwood remaining in the home and Mr. Cherry paying her bills and giving her spending money. The chronology of events thereafter shows that on April 3, 1968, Mr. Cherry executed a will which provided that if Mrs. Norwood was in his employ at his death she would receive the household furniture, his automobile and $2,500 cash. On May 31, 1968, Mr. Cherry and Mrs. Norwood had premarital blood tests done by Dr. Harlan C. Holmes. August 1, 1968, Mr. Cherry established the joint savings account with right of survivorship here involved in Pulaski Federal Savings and Loan Association, with a deposit of $5,000. September 3, 1968, Mr. Cherry executed a second will making Mrs. Norwood a co-executrix with one of his sons and giving her his household goods and automobile if she were in his employ at his death, but omitted any reference to money. April 4, 1969, Mr. Cherry made an additional $5,000 deposit to the savings account. June 12, 1969, Mr. Cherry went to the hospital. June 30, 1969, while still in the hospital, Mr. Cherry transferred his automobile to Mrs. Norwood. On July 8, 1969, appellant Robert Maxwell Cherry, was appointed guardian.

Concerning the arrangement between Mr. Cherry and Mrs. Norwood, she testified that she was to be treated as a member of the family. Mr. Cherry gave her spending money, bought her clothes and paid her doctor bills. At his request she accompanied him on trips to Conway, Beebe, Benton, Little Rock, Altheimer and England. According to her, Mr. Cherry opened the savings account in Pulaski Federal Savings to be sure that if something happened to him, she would not be left without anything. Before leaving Clarendon she made $50.00 a week while working out and $28.00 a week spending four nights a week with an elderly person under some sort of housekeeping arrangement. Following termination of her employment with Mr. Cherry she went to work at the Stuttgart Memorial Hospital for $235.00 a month.

Florida Ann Floyd, a maid who had worked for Mr. Cherry 21 years, testified that she worked one day

a week for Mr. Cherry while Mrs. Norwood was employed and that when Mrs. Norwood went away she stayed with Mr. Cherry. Florida Ann said that Mr. Cherry and Mrs. Norwood got along, they were friendly and happy and Mrs. Norwood waited on him because Mr. Cherry wanted waiting on, and he wanted waiting on until this day—somebody to pet him and wait on him. Florida Ann said that Mrs. Norwood told her that she, Mrs. Norwood, was to get the furniture. When Florida Ann suggested this wasn't enough money Mrs. Norwood said that Mr. Cherry was going to will her some money. She said that Mr. Cherry gave Mrs. Norwood a passbook with $10,000 in it and told Florida Ann that the $10,000 was to last Mrs. Norwood a lifetime. Florida Ann told Mrs. Norwood that if she had $1,000 she would go home. Mrs. Norwood's retort was, "I got it made".

During oral argument of this case before the court, counsel for appellant suggested that the record showed that appellee terminated her employment of her own accord, thus relieving the estate of any quantum meruit liability because it had lived up to Mr. Cherry's contract until breached by Mrs. Norwood. The record does show that Robert Maxwell Cherry, the appellant, urged Mrs. Norwood to stay in the employment of Mr. Cherry but admittedly appellant had demanded a restoration of the property involved. Mrs. Norwood testified that appellant had tried to scare her into moving before that and had already scared Mr. Cherry half to death. Other testimony shows that there was someone slamming the screen door throughout the night and running over a steel plate in the driveway which Mrs. Norwood attributed to appellant. Furthermore, appellant does not dispute Mrs. Norwood's testimony that he had taken the key away from her, that she had to call him when she wanted in the house, when she left the house, and if she wanted to take a bath.

A preponderance of the record shows that Mrs. Norwood worked for Mr. Cherry under some sort of "a master and servant relationship." Part of the com-

pensation contemplated in that arrangement appears to have been all or that part of the $10,000 savings account that was remaining after the death of Mr. Cherry. Under these circumstances we cannot say that the Chancellor's finding in favor of appellee is contrary to a preponderance of the evidence either on the issue of the amount of the compensation awarded or the issue of the termination of the employment.

Affirmed.